IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALEXANDER MCKENZIE, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>R. BRADBURN, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:20-cv-00509<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Alexander McKenzie, a former federal prisoner and current inmate in North Carolina, is proceeding *pro se* in this civil rights action. McKenzie has named three defendants in their individual capacities, all of whom are Bureau of Prisons ("BOP") staff members at USP Lee: R. Bradburn, J. Testerman, and M.L. Ball. Pending before the court is defendants' motion to dismiss or, in the alternative, for summary judgment, brought on behalf of all defendants, to which McKenzie has responded. McKenzie also has sought leave to file a second amended complaint, which defendants oppose.

The court has considered materials outside the pleadings submitted by both parties, so the court will treat defendants' motion as one for summary judgment under Federal Rule of Civil Procedure 56 instead of a motion to dismiss. Because the undisputed evidence shows that McKenzie failed to exhaust available administrative remedies, the court will grant defendants' motion as to his claims properly brought pursuant to *Bivens v. v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] To the extent that his claims concerning his disciplinary conviction are more properly brought as a habeas petition pursuant to 28 U.S.C. § 2241—which McKenzie has not filed—the court declines to so construe them and instead

---

[1] Defendants have moved for dismissal on other grounds, as well. In light of its ruling, the court does not address those other grounds.

dismisses them without prejudice.  McKenzie's motion to amend will be denied because his failure to exhaust also bars the claims in his proposed second amended complaint.

I. BACKGROUND

In his verified amended complaint, McKenzie alleges that on April 8, 2020, defendants Ball and Bradburn walked by his door, where he and his cellmate were standing for count. Fifteen seconds later, Bradburn came back and asked McKenzie what he had said, and McKenzie told Bradburn that he had been having a private conversation with his roommate.  He was then directed to submit to handcuffs, for no reason, which he did.  Then, while being escorted and despite McKenzie not resisting, defendant Bradburn attacked him from behind, knocking him to a steel landing, and choked him until he was unconscious.  He claims that he woke to officers, including the three defendants, punching him "all over his body." (Am. Compl. 3–4, Dkt. No. 21.)  He was then placed in the restraint chair and taken to the Special Housing Unit ("SHU").

There, he was taken out of the chair, but Bradburn and others then assaulted him again, beating and punching him while he was restrained, and Bradburn also "kicked him in the genitals" and "cut two rows of braids hair out of [his] head." (*Id.* at 5.)  He alleges that the incidents resulted in cuts to his knee and multiple deep cuts to his face, as well as pain to his throat from Bradburn "crushing his voice box during the chokehold." (*Id.* at 3–6.)

Thereafter, McKenzie claims that staff falsified reports concerning the incident, brought false disciplinary charges against him, and then denied him access to the administrative remedy process, thereby preventing him from reporting the alleged abuse.  He also claims that he was denied medical care immediately after the beatings and for a period of time afterward.  Lastly, he alleges that he was denied due process in relation to his disciplinary hearing arising from the April 8 incident.

Relying on their incident reports and the declaration of Special Investigative Agent Jamie Canfield, who investigated the incident, defendants tell a different story. They contend that that during the evening count, around 9:00 p.m., McKenzie did not stand for count, but was lying down. When commanded to stand for count, he got down from the top bunk where he was lying, walked towards the door, and stated to Ball: "You're a homosexual. I hate homosexuals, and I am going to cut your fucking head off." (Canfield Decl. ¶ 12, Dkt. No. 30-1.)[2] Ball, perceiving this statement as a threat to her safety, notified the activities lieutenant, and it was determined that McKenzie should be escorted out of the unit. During the escort, other persons (not named in the amended complaint) applied the restraints through McKenzie's tray slot. Then Testerman and Bradburn began to escort him. During the escort, McKenzie pulled away as he was escorted onto the landing at the top of the stairs and attempted to use his elbow to assault Bradburn in the rib and torso. Bradburn and Testerman had to use force to place McKenzie on the ground on the landing.[3] McKenzie's face was injured on the floor of the landing, which is made of metal grating with grooves for traction, designed to keep people from slipping on the landing or stairs. Other staff members then escorted McKenzie in a restraint chair, and he was taken to the SHU in the chair. (*See generally id.*)

According to a medical assessment that occurred less than an hour after the incident, McKenzie had a 2.5 cm laceration to his left upper eyelid, 2 deep scratches to his mid forehead, a .5 cm laceration to the right outer eyebrow, and a deep scratch to the right nostril. (*Id.* ¶ 31.) Although staff initially planned to take him to an outside emergency room for further evaluation

---

[2] McKenzie states that he made "a comment" in a conversation with his cellmate and that defendants "made a false assumption about the conversation." (Opp'n 2, Dkt. No. 26.)

[3] McKenzie disputes much of this evidence, and video evidence of the incident was not preserved. Nonetheless, the disputed facts are not material because the court is dismissing his claims solely because of McKenzie's failure to exhaust.

and treatment, an on-call BOP medical provider reported to the institution and was able to provide a full evaluation. At approximately 1:10 a.m. on April 9, 2020, the provider, a licensed nurse practitioner, came to the prison, evaluated McKenzie, and gave him eleven sutures after applying local anesthesia. (*Id.* ¶¶ 34–35.) From then until October 2020, when he was released, McKenzie had only one other encounter with medical staff: on April 15, 2020, he had his sutures removed. (*Id.* ¶ 41.)

McKenzie was held in the SHU until his release from federal custody on October 9, 2020. (*Id.* ¶ 42.) As a result of the incident, he was charged and found guilty of Assaulting Without Serious Injury (Attempted) and Threatening Bodily Harm, and he received sanctions as a result, including the loss of earned good time. (Canfield Decl., Atts. J, K.) The disciplinary sanctions have not been challenged, overturned, or expunged. (*Id.* ¶¶ 48, 50.)

The factual background concerning McKenzie's attempts to exhaust will be discussed in context below.

## II.  DISCUSSION

### A. Motion to Amend

The court first addresses McKenzie's motion to amend (Dkt. No. 23). Leave to amend should be freely given, Fed. R. Civ. P. 15(a), but leave to amend may be denied for several reasons, including where the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (noting that an amendment is futile if the amended complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).[4]

---

[4] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Here, McKenzie's motion to amend primarily seeks to add additional defendants to the case, such as the other officers who transported him, and includes very few new allegations against those defendants. But all of his claims against them still arise from the same events: the April 8, 2020 transport, his medical care afterward, and his disciplinary conviction arising from those events. As a result, nothing in his proposed second amended complaint alters the court's analysis. Put differently, because McKenzie has failed to exhaust any of the claims he raises related to the April 8 incident or the lack of medical care, it is irrelevant who he names as defendants. His claims are subject to dismissal in their entirety based on his failure to exhaust.[5] Likewise, his claims related to the disciplinary process are being dismissed because they should have been brought in a petition for habeas corpus, pursuant to 28 U.S.C. § 2241, and any such claim has been mooted by his release. That remains true regardless of the defendants named.

Accordingly, allowing amendment would be futile. *Laber*, 438 F.3d at 426. McKenzie's motion to amend will be denied.

**B. Motion for Summary Judgment**

    **1. Summary Judgment Standard**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S.

---

[5] Although a failure to exhaust administrative remedies is an affirmative defense, courts have the "ability to dismiss complaints for failure to exhaust administrative remedies where the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense." *Custis v. Davis*, 851 F.3d 358, 362 (4th Cir. 2017). Here, the defendants who McKenzie seeks to add obviously have not raised the issue, but all other defendants did, and McKenzie has been given a full opportunity to respond. Moreover, because the court is denying leave to amend, the claims against the parties he seeks to add technically are not part of this lawsuit. Thus, to the extent the court's ruling is interpreted as one dismissing those claims (rather than disallowing them to be added in the first place), any such dismissal is without prejudice. This includes claims against D. Hughes, Warden J.C. Streeval, Captain Baker, Associate Warden Henger, Health Administrator Saylor, J. Brown, and seven "compound officers" as John Does.

557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

**2. Exhaustion under the Prison Litigation Reform Act**

The Prison Litigation Reform Act requires a prisoner-plaintiff to exhaust his available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Moreover, *proper* exhaustion of remedies is required, which includes "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91–92 (2006). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 1174, ___, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

### 3. The BOP's Administrative Remedy Procedure

The BOP's administrative remedy procedure is relatively straightforward and, basically, involves three steps: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal.[6] The first step requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden must establish procedures for inmates at his institution to do so. *Id.*

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "Administrative Remedy Request") with the institution on the proper form within twenty calendar days of the incident at issue. *Id.* § 542.14(a). Generally, an inmate must obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. *Id.* § 542.14(c)(1), (4).

---

[6] Slightly different procedures apply to appeals of disciplinary hearings. McKenzie alleges that he could not appeal his disciplinary conviction because the hearing officer did not provide him with a copy of the report required for the appeals process. Even if true, this claim is not properly brought in this *Bivens* action, as noted *infra*.

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the institutional Warden's response to his BP-9, he may appeal to the Regional Director within twenty calendar days of the Warden's response, using the appropriate form (a BP-10 form). *Id.* § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response. *Id.* Appeal to the General Counsel is the final administrative appeal. *Id.* § 542.15(a).

At USP Lee, the local supplement to these procedures provides that inmates may request informal resolution forms (BP-8 forms) from their counselor. Once completed, they are returned to the counselor and forwarded to the appropriate department for resolution. (Destiny Spearen Decl., Att. A, Dkt. No. 30-2 at 4–10, titled "Institution Supplement Lee 1330.18E, Administrative Remedy Program.") Staff should ordinarily respond to the request within five working days. If the informal resolution attempt is unsuccessful, the unit manager will sign the informal resolution form to certify the form has been properly completed and the attempt at informal resolution has been completed in a timely manner. The counselor will then issue a BP-9 form upon the inmate's request. *Id.*

Significantly, moreover, a BOP prisoner who fears for his safety in filing a complaint or informal complaint at his facility may file a "sensitive" request by sending his concerns directly to the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1).

**4. McKenzie's Failure to Exhaust**

It is undisputed that McKenzie did not fully exhaust his administrative remedies, but he provides two reasons why that failure should not bar his claims. The court addresses each in turn and rejects both. McKenzie's first argument is that he attempted to exhaust because he gave an informal resolution form (BP-8) to his counselor on September 2, 2020, approximately five

months after the initial incident and months after his disciplinary hearing occurred in May 2020. He presents his own testimony and the testimony of another witness about this fact. He then claims that, although the BP-8 form was assigned a number, he never received a response to it. (Opp'n 7, Dkt. No. 26; Christian McKnight 1st Decl., Dkt. No. 26-1 at 3; *see also* Notice, Dkt. No. 13). Defendants do not dispute that McKenzie filed a BP-8 in September 2020 and did not receive a timely response. (*See* Lawrence Calton Decl. ¶¶ 12–14, Dkt. No. 30-3.)

This belated attempt to exhaust cannot excuse McKenzie's failure to exhaust. This is so because the BP-8 form was not filed within twenty days of the incident, nor does McKenzie offer any valid reason for taking so long to file it.[7] And while McKenzie argues in his opposition that there is no twenty-day deadline tied to the incident (Opp'n 8), the C.F.R. and USP Lee's policies are to the contrary, as explained above. *See* C.F.R. 542.14(a). Because the BP-8 was not timely, neither the failure to respond nor his counselor's alleged refusal to provide a BP-9 form (which that counselor has denied (Calton Decl. ¶ 15)) prevented McKenzie from properly exhausting. By the time he submitted his BP-8 in September 2020, though, the time for exhausting already had expired. So, nothing that happened after that time prevented him from exhausting. Thus, he failed to properly and fully exhaust, as required by *Woodford*, 548 U.S. at 91–92.

---

[7] While administrative remedies must typically be filed by inmates within the specified time limits, where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. 28 C.F.R. § 542.14(b). The regulations explain:

> In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id.* McKenzie does not allege any of those circumstances.

9

The second reason McKenzie offers for his failure to exhaust is that he had already been beaten once, was "scared and traumatized," and "staff at USP Lee have a culture of beating inmates who file administrative remedies until the inmate agrees to not file remedies." (Opp'n 8–9.) He also provides declarations from his cellmate from July 2020 to September 2020, Christian McKnight. Both he and McKnight testify that, while in the SHU, they heard inmates being beaten by staff. (Opp'n 9; McKnight 2d Decl., Dkt. No. 26-1 at 4.) McKnight further testifies that he has "spoken with some of these victims and they expressed the shackled beatings were for filing remedies against staff." (McKnight 2d Decl, Dkt. No. 26-1 at 4.) McKenzie does not state, however, that any officers directly threatened him—with physical harm or anything else—if he were to file a remedy. And McKnight likely would not be permitted to testify as to what other people told him, if that testimony is offered for its truth. Fed. R. Evid. 801-804. And, in any event, it is unclear how those other victims would know why they were beaten.

As to this second basis that McKenzie offers for excusing his failure, a general fear of "retaliation" does not render administrative remedies "unavailable." *See Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) (concluding that "unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered," without factual details, were insufficient to defeat summary judgment); *Wilson v. Kiser*, No. 7:17cv00092, 2017 WL 4613195, at *4 (W.D. Va. Oct. 16, 2017) ("Wilson apparently believes that the officers threatened his safety in some way, but he simply states no facts showing that such fears were reasonable or that their actions 'thwarted the effective invocation of the administrative process.'"). Moreover, as noted above, a prisoner who fears retaliation for filing an internal complaint may file a "sensitive" request instead, requesting relief directly from the Regional Director. If McKenzie was sufficiently concerned about retaliation or another beating by anyone at USP Lee, he could have filed a sensitive request. He did not.

10

For all of these reasons, McKenzie has failed to put forth sufficient facts from which a reasonable jury could conclude that he exhausted available administrative remedies as to his claims concerning the April 8, 2020 incident or the medical care he received afterward. The court will therefore dismiss those claims. Because the time for exhausting his remedies as it relates to those incidents has passed, moreover, there is no conceivable way that he could now go back and exhaust. Thus, the court dismisses the claims with prejudice. *Woodford*, 548 U.S. at 95 (noting that PLRA does not permit a prisoner to simply file a late grievance without justification and then proceed directly to court).

**5. McKenzie's due process allegations related to his hearing**

McKenzie's claims of due process violations relate to his disciplinary proceedings, which resulted in the loss of previously-earned good-time credits and therefore affected his release date. Because success on these claims would affect the duration of his imprisonment, they should be brought pursuant to 28 U.S.C. § 2241, not in a civil rights action. *Cf. Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that a civil rights "action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration"). Now that McKenzie has been released from federal custody, though, any such claim is moot.[8] *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining that in the context of habeas corpus, a case is rendered moot when the inmate has been released from the custody being

---

[8] Additionally, courts ordinarily require petitioners to exhaust available administrative remedies prior to seeking § 2241 relief, *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished) (citing *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)). Although it appears that McKenzie did not file any appeals from his disciplinary hearing, (Spearen Decl. ¶¶ 7–8, Dkt. No. 30-2), he claims that he was prevented from doing so because the hearing officer would not give him the report, which he needed to appeal. (Am. Compl. 7.) Thus, there may be disputed facts as to whether remedies were available to him as to an appeal from the disciplinary conviction.

challenged, without collateral consequences, and the court can no longer remedy the inmate's grievance); *Gore v. Adams*, No. 2:04CV481, 2005 WL 1162525, at *1–2 (E.D. Va. Apr. 26, 2005) (recommending dismissal of petitioner's § 2241 petition seeking recalculation of his good time credits as moot upon his release); *see also Scott v. Schuykill FCI*, 298 F. App'x 202, 204 (3d Cir. 2008) (explaining that § 2241 petition was moot where petitioner challenged loss of good time credits, but was subsequently released; his release meant that "his good time credits ceased to have any effect" (citing 28 C.F.R. § 2.35(b)).

In light of this background, and because McKenzie has brought his claims as a *Bivens* action, the court declines to construe any portion of McKenzie's complaint as a 28 U.S.C. § 2241 petition. Instead, the court will dismiss his claims challenging his hearing without prejudice.

## C. Other Pending Motions

Also pending before the court are several discovery-related requests, including several in which McKenzie requests discovery or seeks to compel discovery. The court has reviewed those, and none of McKenzie's filings specifically reference Rule 56(d). Nor do his filings contain the affidavit required by that rule. Moreover, the court concludes that permitting additional discovery is unnecessary in light of the court's resolution of McKenzie's non-habeas claims on exhaustion grounds. He admits that he did not properly and fully exhaust, and any knowledge about why he failed to do so is within his own control. Thus, Rule 56(d), which is applicable when a nonmovant shows that "it cannot present facts essential to justify its opposition," usually because the facts are unavailable to him, is not applicable here. The court thus concludes that there is no need to allow discovery prior to ruling on the summary judgment motion, and, instead, all other pending motions will be denied without prejudice as moot.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted, McKenzie's motion to amend will be denied, and all other pending motions will be denied as moot.  An appropriate order will be entered.

Entered: September 7, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge